Christopher X. BOHLEN, Appellant,

v.

Paul D. CASPARI;  William
Webster, Appellees.

No. 91–3360.

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1992.

Decided Oct. 16, 1992.

Rehearing and Rehearing En Banc
Denied Dec. 8, 1992.

As Amended Dec. 11, 1992.

Richard Holland Sindel, Clayton, Mo., argued, for appellant.

Frank A. Jung, Jefferson City, Mo., argued (William Webster and Frank A. Jung, on the brief), for appellees.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Christopher X. Bohlen appeals the denial of his habeas corpus petition by the district court. Bohlen argues that he was subject to double jeopardy at a resentencing hearing where the state was given a second chance to prove that he is a persistent offender under Missouri law. Finding that double jeopardy protections apply to persistent offender sentencing proceedings in Missouri, we reverse.

I. BACKGROUND

Bohlen, on July 1, 1982, was convicted by a jury in the Circuit Court of St. Louis County, Missouri, on three counts of first degree robbery. On October 15, 1982, the trial court sentenced him as a persistent offender to three consecutive fifteen-year terms in prison. The record shows that no evidence of prior convictions was presented either at trial or at the sentencing hearing to prove that Bohlen was a persistent offender.

On direct appeal, the Missouri Court of Appeals affirmed the conviction, but reversed and remanded for a hearing on the state's allegations of prior convictions and for resentencing if the state could prove Bohlen's persistent offender status beyond a reasonable doubt. State v. Bohlen, 670 S.W.2d 119, 123 (Mo.Ct.App.1984). At the resentencing hearing, the state introduced evidence of four prior felony convictions. The trial court determined that Bohlen was a persistent offender, and again sentenced him to three consecutive fifteen-year terms. On direct appeal of the second sentence, the Missouri Court of Appeals affirmed, holding that the question of double jeopardy was not involved because double jeopardy protections do not apply to sentencing. State v. Bohlen, 698 S.W.2d 577, 578 (Mo.Ct.App.1985).

On September 5, 1989, Bohlen filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2254. Bohlen's petition alleged, among other things, that he was subjected to double jeopardy when the state was allowed to introduce evidence of prior convictions at the second sentencing hearing. The magistrate judge recommended that relief be denied. Bohlen v. Caspari, No. 89–1651–C(4), Report and Recommendation of the Magistrate Judge (E.D.Mo. August 14, 1991) According to the magistrate judge, jeopardy did not attach at the first sentencing hearing because the hearing lacked the hallmarks of an adversarial trial. Id. at 13. Thus, the second sentencing hearing did not violate double jeopardy. The district court adopted the magistrate judge's recommendations and denied habeas corpus relief. Bohlen v. Caspari, No. 89–1651–C(4), Order (E.D.Mo. August 28, 1991). Bohlen appeals arguing that the resentencing hearing constituted double jeopardy under the rule announced in Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

II. DISCUSSION

The issue in this case is whether the double jeopardy clause of the Fifth

Amendment, imposed upon the state through the Fourteenth Amendment, prevents resentencing of a defendant in a non-capital case where an appellate court has reversed the defendant's sentence, under a persistent offender statute, for the state's failure to prove any prior convictions. Since Bohlen is before us on collateral review, we must determine as a threshold matter whether applying the double jeopardy rule in *Bullington* to a non-capital case would constitute a "new rule" for purposes of retroactivity.[1] *Penry v. Lynaugh*, 492 U.S. 302, 313, 109 S.Ct. 2934, 2943, 106 L.Ed.2d 256 (1989); *Teague v. Lane*, 489 U.S. 288, 300–01, 109 S.Ct. 1060, 1069–70, 103 L.Ed.2d 334 (1989); *Newlon v. Armontrout*, 885 F.2d 1328, 1331 (8th Cir.1989), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). Under *Teague*, Bohlen may not attack his sentence on federal habeas corpus using a rule of constitutional law established after his sentence became final unless the rule falls into one of two narrow exceptions.[2] *Saffle v. Parks*, 494 U.S. 484, 494–95, 110 S.Ct. 1257, 1263–64, 108 L.Ed.2d 415 (1990); *Teague*, 489 U.S. at 311–13, 109 S.Ct. at 1075–76. Since we find that extending double jeopardy protection to the Missouri persistent offender sentencing procedure is not a new rule for retroactivity purposes, we do not address the application of the two exceptions here.

### A. *New Rule Analysis*

The Supreme Court has defined a new rule as one which "breaks new ground or imposes a new obligation on the States or the Federal Government," or, "[t]o put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's [sentence] became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. The Court noted that "[i]t is admittedly often difficult to determine when a case announces a new rule." *Id.* Difficulties inevitably arise in attempting to distinguish application of a new rule from application of a well-established constitutional principle to a case which is analogous to those considered in prior case law. *Penry*, 492 U.S. at 314, 109 S.Ct. at 2944. A rule is not new if "a state court considering [petitioner's] claim at the time his [sentence] became final would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution." *Saffle*, 494 U.S. at 488, 110 S.Ct. at 1260.

Bohlen's sentence became final on August 20, 1985, when the Missouri Court of Appeals affirmed his sentence after remand. *State v. Bohlen*, 698 S.W.2d 577 (Mo.Ct.App.1985). Since *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), were decided before his sentence became final, Bohlen is entitled to the benefit of those decisions under the retroactivity principles announced in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

In *Burks*, the Supreme Court held that the double jeopardy clause forbids retrial of a defendant whose conviction is overturned by an appellate court because of insufficiency of the evidence at trial. *Burks*, 437 U.S. at 16, 98 S.Ct. at 2149. According to the Court, the reversal for insufficient evidence is tantamount to an implicit acquittal by the trial court. *Id.* at 18, 98 S.Ct. at 2150. In *Bullington*, the

---

**1.** We have addressed this issue before and found that double jeopardy protection does apply in certain non-capital sentencing proceedings, *Nelson v. Lockhart*, 828 F.2d 446, 449 (8th Cir.1987), *reversed on other grounds sub nom. Lockhart v. Nelson*, 488 U.S. 33, 37–38 n. 6, 109 S.Ct. 285, 289 n. 6, 102 L.Ed.2d 265 (1988). However, *Nelson v. Lockhart* was decided after Bohlen's sentence became final and thus is not applicable under *Teague* if it is a new rule. Accordingly, we discuss whether *Bullington* applies in non-capital cases from the perspective of a state court sitting at the time Bohlen's conviction became final, without the benefit of *Nelson v. Lockhart*.

**2.** *Teague* and its progeny speak in terms of the date of conviction instead of the date of sentencing. Since Bohlen does not attack the constitutionality of his underlying conviction, however, the relevant date for purposes of our inquiry is the date his sentence became final. *See Stringer v. Black*, —— U.S. ——, ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992).

Court extended this principle to a death penalty sentence enhancement hearing. *Bullington*, 451 U.S. at 442–43, 101 S.Ct. at 1859–60. The defendant in *Bullington* was convicted of capital murder and sentenced by the jury after an enhancement hearing to life in prison rather than death, the other alternative under the Missouri statute. After the verdict and sentence, Bullington successfully moved for a new trial. The state then gave notice that it intended to seek the death penalty for a second time. Bullington claimed that the double jeopardy clause barred the imposition of the death penalty because the first jury had declined to impose a death sentence. The Missouri Supreme Court found no double jeopardy implications. The United States Supreme Court reversed.

The Court reasoned that although "[t]he imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence that could have been imposed," *Bullington*, 451 U.S. at 438, 101 S.Ct. at 1857, "[b]y enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, ... Missouri *explicitly requires* the jury to determine whether the prosecution has 'proved its case.'" *Id.* at 444, 101 S.Ct. at 1861. Under these circumstances, because the jury had failed to find "whatever was necessary" to sentence Bullington to death, imposition of the life sentence acted as an implicit acquittal of the death penalty. Thus, the double jeopardy clause protected Bullington from being subjected to a new hearing where the death penalty might be imposed.

The Court found it significant in deciding to invoke double jeopardy protection that, unlike usual sentencing procedures in which the "sentencer's discretion [is] essentially unfettered," *id.* at 439, 101 S.Ct. at

1858, the Missouri capital sentencing procedure required a separate hearing where the jury was presented with a choice between two alternatives and standards to guide them in making that choice. *Id.* at 438, 101 S.Ct. at 1857. The prosecution was not allowed to simply recommend appropriate punishment, but "undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts." [3] *Id.* The Court held that these statutory protections made the Missouri capital sentencing proceeding unlike ordinary sentencing proceedings to which the double jeopardy clause does not apply. *See North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969).[4] The capital sentencing proceeding in *Bullington* was so similar to a trial on the issue of guilt that Bullington was entitled to double jeopardy protection. Thus, the Court applied the rule announced in *Burks*—that a defendant may not be retried if he obtains a reversal of his conviction for insufficiency of the evidence—to Bullington.

The persistent offender sentencing enhancement procedure in Missouri has protections similar to those in the capital sentencing hearing in *Bullington*. A persistent offender is a person who has pleaded guilty to or been found guilty of two or more felonies committed at different times. Mo.Rev.Stat. § 558.016.3 (1986). In order for the court to find that a defendant is a persistent offender, (1) the charging document must plead all essential facts warranting a finding that the defendant is a persistent offender; (2) evidence must be introduced by the state to establish that the facts as pleaded warrant a finding beyond a reasonable doubt that the defendant is a persistent offender; and (3) the trial

---

**3.** The Court found that use of the reasonable doubt standard indicated that it was the state, not the defendant, that should bear almost the entire risk of error. *Bullington*, 451 U.S. at 446, 101 S.Ct. at 1862.

**4.** The state argues that "the continuing vitality of *Bullington* is open to question since it has no foundation in the rationales discussed in *North Carolina v. Pearce*." Appellee's Brief at 11. This argument appears to put the cart before the

horse since *Bullington* was decided after *Pearce* and carved out a specific exception to the rationale of *Pearce*. *Bullington* distinguished *Pearce* because, among other reasons, "there was no separate sentencing proceeding at which the prosecution was required to prove—beyond a reasonable doubt or otherwise—additional facts in order to justify the particular sentence." *Bullington*, 451 U.S. at 439, 101 S.Ct. at 1858.

court must make findings of fact that warrant a finding beyond a reasonable doubt that the defendant is a persistent offender. *Id.* § 558.021.1. At the hearing on persistent offender status, the defendant has rights of confrontation, cross-examination, and the opportunity to present evidence. *Id.* § 558.021.4. Persistent offender status greatly affects the defendant's rights. A finding by the court that the defendant is a persistent offender deprives the defendant of the opportunity to be sentenced by a jury, *id.* §§ 557.036.2; 558.016.1, and subjects the defendant to the possibility of a greater term of imprisonment. *Id.* § 558.-016.1.

The state argues that *Bullington* does not extend to non-capital cases. According to the state's argument, application of double jeopardy protection to capital sentencing was compelled because capital sentencing involves "additional sensitivities created by the Eighth Amendment" not present in persistent offender enhancement hearings. Appellee's Brief at 11. The language of *Bullington* belies this assertion. Nowhere in *Bullington* does the majority rely on Eighth Amendment concerns to support its holding. In his dissent, Justice Powell explicitly recognizes the scope of the majority rule, noting that "[t]he Court does not purport to justify its conclusion with the argument that facing the death sentence a second time is more of an ordeal in the legal sense than facing any other sentence a second time." *Bullington,* 451 U.S. at 451, 101 S.Ct. at 1864 (Powell, J., dissenting). According to its plain language, *Bullington* is applicable to any sentencing procedure that is sufficiently similar to a trial of guilt or innocence to implicate the double jeopardy clause.

Accordingly, we find that *Bullington* dictates that the implicit acquittal rationale of *Burks* must apply to the Missouri persistent offender sentencing scheme to bar a second enhancement hearing where there has been a finding of insufficient evidence of persistent offender status.[5] Missouri considers persistent offender sentencing serious enough to set up a statutory enhancement procedure with protections similar to a trial on guilt or innocence. That procedure is sufficiently similar to trial procedures that it triggers double jeopardy protection. In a persistent offender hearing, the trial court has two alternatives: to find that the defendant is a persistent offender beyond a reasonable doubt or not. The outcome of this decision greatly affects the possible length of defendant's sentence. By placing the burden of proof beyond a reasonable doubt on the state, Missouri has indicated that the state should bear most of the risk of error. It is a hallmark of our system of jurisprudence that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). After *Bullington,* it is a short step to apply the same double jeopardy protection to a non-capital sentencing hearing as the Supreme Court applied to a capital sentence enhancement hearing. The rule is not new. Accordingly, *Teague* does not bar Bohlen from reliance on the double jeopardy principles announced in *Bullington.*

### B. *Reasonableness Determination*

The state argues that even if we find *Bullington* controlling, we should give def-

---

5. The district court adopted the magistrate's reasoning that in this instance jeopardy did not attach in the first hearing because there were no disputed issues, no new evidence or witnesses were presented (other than allocution), there were no opening or closing statements made by either party, and the reasonable doubt standard was not employed. *Bohlen v. Caspari,* No. 89–1651–C(4), Report and Recommendation of the Magistrate Judge at 13 (E.D.Mo. August 14, 1991). The magistrate judge noted that "[i]n fact, the prosecutor remained silent throughout most of the proceeding." *Id.* This reasoning

does not follow from double jeopardy jurisprudence. If the state were to proceed to trial in a criminal case, and after the jury was sworn presented no evidence or witnesses, further prosecution would be prohibited. *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978); *State v. Fitzpatrick,* 676 S.W.2d 831, 834 (Mo.1984) (en banc). Missouri's statutory requirements for persistent offender hearings are clear. The state cannot defeat a double jeopardy claim by showing that it totally failed to sustain its burden of proof.

erence to the Missouri Court of Appeals' rejection of the *Bullington* rule in a non-capital case because it was reasonable under the jurisprudence at the time Bohlen's sentence became final. In support of this argument the state asserts that there is currently a split among the federal circuits on the issue of whether *Bullington* applies in non-capital cases and that Missouri courts have held that the persistent offender statute does not implicate double jeopardy.[6]

■ The principles of *Teague* serve to ensure that "gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered." *Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990). The Supreme Court extended this principle recently, holding that "a federal habeas court 'must defer to the state court's decision rejecting the claim [under its interpretation of existing law] unless that decision is patently unreasonable.'" *Wright v. West*, — U.S. —, —, 112 S.Ct. 2482, 2490, 120 L.Ed.2d 225 (1992) (quoting *Butler v. McKellar*, 494 U.S. 407, 422, 110 S.Ct. 1212, 1221, 108 L.Ed.2d 347 (1990) (Brennan, J., dissenting)). Reasonableness in this context is an objective standard. *Stringer v. Black*, — U.S. —, —, 112 S.Ct. 1130, 1140, 117 L.Ed.2d 367 (1992). Thus, the ultimate decision whether precedent at the time Bohlen's sentence became final dictated application of the double jeopardy clause to the Missouri persistent offender hearing is based on our objective reading of *Bullington*.

In this case, as indicated, the state argues that there is a split among the circuits which shows that reasonable jurists could disagree over whether *Bullington* applies in non-capital cases. Thus, the state argues, the Missouri appellate court acted reasonably when it denied Bohlen double jeopardy protection. The state notes additionally that the Supreme Court has not yet

commented on the availability of *Bullington* in non-capital proceedings. *See Lockhart v. Nelson*, 488 U.S. 33, 37–38 n. 6, 109 S.Ct. 285, 289 n. 6, 102 L.Ed.2d 265 (1988) (declining to address the issue because the Eighth Circuit held that *Bullington* does apply in non-capital cases and the state conceded the issue in its briefs and at oral argument); *Hunt v. New York*, — U.S. —, 112 S.Ct. 432, 116 L.Ed.2d 451 (1991) (White, J., dissenting from denial of certiorari).

We note initially that the apparent split among the circuits may in fact be illusory. In *Lockhart v. Nelson*, the Court, assuming that *Bullington* applies to non-capital cases, held that double jeopardy does not apply to enhancement proceedings where the sentence is reversed due to trial error, not insufficient evidence. *Lockhart v. Nelson*, 488 U.S. at 39, 109 S.Ct. at 290. In both federal cases relied on by the state as barring double jeopardy protection in sentencing enhancement proceedings, the holdings were ultimately based on trial error. *See Linam v. Griffin*, 685 F.2d 369, 374 (10th Cir.1982) (double jeopardy does not bar resentencing when evidence is *incorrectly* excluded), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Denton v. Duckworth*, 873 F.2d 144, 148 (7th Cir.) (under *Lockhart v. Nelson*, double jeopardy does not apply where evidence initially introduced was sufficient, even if some of it was introduced erroneously), *cert. denied*, 493 U.S. 941, 110 S.Ct. 341, 107 L.Ed.2d 330 (1989). *See also Tate v. Armontrout*, 914 F.2d 1022, 1026 (8th Cir. 1990) (distinguishing a total failure of proof from situations where sufficient evidence was produced, but erroneously excluded). Appellant cites no federal holding resting squarely on the proposition that *Bullington* does not apply to non-capital sentencing enhancement proceedings.

The state's argument that we should defer to the Missouri appellate court because

---

**6.** The state also distinguishes the present case from *Bullington* because the persistent offender decision here was made by the judge, not a jury. This distinction does not affect the determination of whether *Bullington* applies in non-capital

cases. *See Stringer*, — U.S. at — — —, 112 S.Ct. at 1138–39; *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962).

it followed prior Missouri precedent similarly lacks foundation. On direct appeal after resentencing, the appellate court relied on *State v. Holt,* 660 S.W.2d 735, 739 (Mo.Ct.App.1983) and *State v. Lee,* 660 S.W.2d 394, 399 (Mo.Ct.App.1983) (per curiam), for the proposition that double jeopardy is not implicated when the court remands for determination of persistent offender status and resentencing. *See State v. Bohlen,* 698 S.W.2d 577, 578 (Mo.Ct.App. 1985). *Holt* does not discuss *Bullington* at all. In *Lee,* after asserting a split in the circuits, the Missouri Court of Appeals stated that "[i]n all events, this court is constrained to follow the procedure on this issue clearly mandated by the decisions of the Supreme Court of Missouri first cited above." *Lee,* 660 S.W.2d at 400. All of the Missouri Supreme Court decisions cited by the court were decided before *Bullington. See id.* at 399. *Lee* rejected without comment the distinction made in *State v. Cullen,* 646 S.W.2d 850 (Mo.Ct.App.1982), between insufficient evidence of persistent offender status and failure of proof due to trial error. *See Lee,* 660 S.W.2d at 400.

The views of the other federal circuits and of the Missouri courts are relevant to our inquiry into whether the Missouri Court of Appeals decision was a reasonable interpretation of existing precedent, but they are not dispositive. *Stringer,* —— U.S. at ——, 112 S.Ct. at 1140. In *Stringer,* the Supreme Court found that an objective reading of the relevant precedent dictated a rule that had been previously rejected by the Fifth Circuit. In answer to the state's argument that the Fifth Circuit decision indicated that reasonable jurists could disagree, the Court responded: "[t]he short answer to the State's argument is that the Fifth Circuit made a serious mistake." *Id.* As we discussed *supra, Bullington* dictates that double jeopardy pro-

tections are available in sentencing proceedings that bear the hallmarks of a trial on guilt or innocence. To the extent that any of the other federal circuits or the Missouri courts have held to the contrary, we think that they were mistaken. Extending *Bullington* to non-capital sentencing enhancement hearings is not a sufficient stretch to cause it to be a new rule under *Teague.* Accordingly, we hold that the Missouri Court of Appeals' decision denying Bohlen double jeopardy protection on remand was unreasonable under the precedent existing at the time Bohlen's sentence became final. We emphasize that in this is not a case of trial error, but a total failure of proof.[7] "Having received 'one fair opportunity to offer whatever proof it could assemble,' *Burks v. United States,* 437 U.S. at 16 [98 S.Ct. at 2150], the State is not entitled to another." *Bullington,* 451 U.S. at 446, 101 S.Ct. at 1862.

## III. CONCLUSION

For the reasons discussed above, the decision of the district court is reversed and the case shall be remanded with directions for the district court to enter a conditional writ of habeas corpus consistent with this opinion. *See Cokeley v. Lockhart,* 951 F.2d 916, 921 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 296, 121 L.Ed.2d 220 (1992).

---

7. The state suggested at oral argument that evidence of prior convictions might have been offered at the first hearing, but was erroneously omitted from the record. Our review of the transcripts belies this assertion. In any event, the state was given ample opportunity to complete the record on Bohlen's direct appeal:

> Our search of the record indicates that although the defendant was sentenced by the judge as a persistent offender no proof was made of the prior convictions. We requested the parties to supplement the record to prove that the prior convictions were presented to the court. No such proof was furnished.
>
> *State v. Bohlen,* 670 S.W.2d 119, 123 (Mo.Ct.App. 1984).