(No. 71542.—
(No. 71820.—
(No. 72736.—
(No. 72929.—
(No. 73108.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JEFFREY LEVIN, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHNNIE TYSON, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT KNOOP, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GUY JOHNS, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DENNIS CARTER, Appellant.

*Opinion filed October 21, 1993.—Modified on denial of rehearing November 29, 1993.*

NICKELS, J., took no part.

Roland W. Burris, Attorney General, of Springfield, Michael J. Waller, State's Attorney, of Waukegan, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, Kenneth R. Boyle and Robert J. Biderman, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, and Renee Goldfarb, Theodore Fotios Burtzos, William D. Carroll, Annette N. Collins and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Arden J. Lang and Gloria A. Morris, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellee Jeffrey Levin.

Randolph N. Stone and Rita A. Fry, Public Defenders, of Chicago (Evelyn G. Baniewicz, Karen E. Tietz and Michaela J. Kalisiak, Assistant Public Defenders, of counsel), for appellant Johnnie Tyson.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos, William D. Carroll, Annette N. Collins and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Karen E. Tietz, Evelyn G. Baniewicz and Michaela J. Kalisiak, Assistant Public Defenders, of counsel), for appellant Robert Knoop.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos,

William D. Carroll, Annette N. Collins and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Gloria A. Morris and Arden J. Lang, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant Guy Johns.

Roland W. Burris, Attorney General, of Springfield, Donald D. Bernardi, State's Attorney, of Pontiac, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos, William D. Carroll, Annette N. Collins and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Michaela J. Kalisiak, Evelyn G. Baniewicz and Karen E. Tietz, Assistant Public Defenders, of counsel), for appellant Dennis Carter.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos, William D.

Carroll, Annette N. Collins and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

In these consolidated appeals we are asked to decide whether, at resentencing, double jeopardy bars the State's second attempt to establish a defendant's eligibility for enhanced sentencing under either the Class X sentencing provision or the Habitual Criminal Act, where the appellate court has vacated the defendant's sentence for the State's failure to prove such eligibility in the first sentencing proceeding.

## BACKGROUND

These several appeals are linked by the singular issue of whether double jeopardy attaches to enhanced-sentencing proceedings. Four of the appeals, People v. Levin, No. 71542, People v. Tyson, No. 71820, People v. Knoop, No. 72736, and People v. Johns, No. 72929, involve sentencing under the Class X provision of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8)). The remaining appeal, People v. Carter, No. 73108, involves sentencing under the Habitual Criminal Act (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1).

Defendants Levin, Tyson, Knoop, and Johns were convicted and sentenced as Class X offenders (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8)), while defendant Carter was convicted and sentenced as a habitual criminal (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1).

In each case (Levin, 207 Ill. App. 3d 923; Tyson, No. 1—90—0747 (unpublished order under Supreme Court Rule 23); Knoop, No. 1—90—2010 (unpublished order under Supreme Court Rule 23); Johns, 220 Ill. App. 3d 1016; Carter, No. 1—89—0931 (unpublished order under

Supreme Court Rule 23)), the appellate court affirmed the defendant's conviction. However, the court found the State's proof of each defendant's qualifying prior convictions to be, in some manner, insufficient to support the imposition of enhanced punishment. The nature of the deficiency of proof is not important for purposes of our review. It is significant only that the court vacated the defendants' sentences and remanded those causes to the trial court for resentencing.

In *Levin*, the court held that, at resentencing, double jeopardy barred the State from again attempting to prove defendant's eligibility for enhanced punishment under the Class X sentencing provision. The State appealed to this court.

In contrast to *Levin*, the court in *Tyson, Knoop, Johns* and *Carter* held that double jeopardy did not preclude the State from seeking enhanced punishment at resentencing. Defendants appealed to this court, contending, *inter alia*, the applicability of double jeopardy to resentencing.

We granted the various parties' petitions for leave to appeal. (134 Ill. 2d R. 315(a).) On this court's motion, the appeals were consolidated and we limited review to the issue of whether double jeopardy applies to Class X and habitual-criminal sentencing procedures.

## DISCUSSION

### Double Jeopardy and Sentencing

The double jeopardy clause of the fifth amendment provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., amend V.) Double jeopardy protections are similarly guaranteed by the Illinois constitution, which provides: "No person shall be *** twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, §10.) The

double jeopardy clause actually embraces three separate protections, which bar (1) retrial for the same offense after an acquittal, (2) retrial for the same offense after a conviction, and (3) multiple punishment for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65, 89 S. Ct. 2072, 2076; *People v. Stefan* (1992), 146 Ill. 2d 324, 333.) It is the first of these three protections upon which defendants seek to rely.

Generally, double jeopardy principles have not been applied to sentencing. The imposition of a particular sentence usually is not regarded as an acquittal of any more severe sentence than could have been imposed. (See *Bullington v. Missouri* (1981), 451 U.S. 430, 438, 68 L. Ed. 2d 270, 278, 101 S. Ct. 1852, 1857; see also *United States v. DiFrancesco* (1980), 449 U.S. 117, 66 L. Ed. 2d 328, 101 S. Ct. 426.) Thus, double jeopardy imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside. See *Pearce*, 395 U.S. at 719, 23 L. Ed. 2d at 666, 89 S. Ct. at 2077-78.

In *Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852, however, the Court carved out an exception to the general rule regarding the propriety of imposing a harsher sentence at retrial. In *Bullington,* the Court found that Missouri's separate capital sentencing hearing resembled the defendant's trial on the issue of guilt. The Court's analogy of the sentencing hearing to trial was supported by the presence of three specific factors at sentencing: (1) the sentencer's determination was guided by substantive standards and based on evidence introduced in a separate proceeding that formally resembled a trial; (2) the prosecution had to prove certain statutorily defined facts beyond a reasonable doubt; and (3) the discretion of the sentencer was restricted to precisely two sentencing alternatives. (*Bul-*

*lington*, 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852; *Arizona v. Rumsey* (1984), 467 U.S. 203, 209, 81 L. Ed. 2d 164, 170, 104 S. Ct. 2305, 2309.) The formality of the separate proceeding, the standard of proof and the lack of sentencing discretion at the capital sentencing proceeding each paralleled the formality of the proceeding, the standard of proof and the lack of discretion in entering a verdict at the defendant's trial on the issue of guilt. Based upon the presence of these three trial-like factors, the Court characterized Missouri's capital sentencing proceeding as having "the hallmarks of the trial on guilt or innocence." See *Bullington*, 451 U.S. at 439, 68 L. Ed. 2d at 279, 101 S. Ct. at 1858.

By enacting a capital sentencing procedure that resembles a trial on the issue of guilt, Missouri requires the jury to determine whether the prosecution has " 'proved its case.' " (*Bullington*, 451 U.S. at 444, 68 L. Ed. 2d at 282, 101 S. Ct. at 1861.) Thus, under the Missouri capital sentencing scheme, a jury sentence of life imprisonment served as an acquittal of " 'whatever was necessary to impose the death sentence.' " (*Bullington*, 451 U.S. at 445, 68 L. Ed. 2d at 283, 101 S. Ct. at 1861, quoting *State ex rel. Westfall v. Mason* (Mo. 1980), 594 S.W.2d 908, 922.) Accordingly, at resentencing, double jeopardy would bar the State's second attempt at obtaining the death penalty.

*Bullington*'s determination that insufficient evidence to support the imposition of the death penalty barred any subsequent attempt to seek the death penalty flows directly from those principles announced in *Burks v. United States* (1977), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141. In *Burks*, the Court reasoned that reversal for insufficient evidence is tantamount to an implicit acquittal by the trial court. Thus, the Court held that the double jeopardy clause forbids retrial of a defendant whose conviction is overturned by a reviewing court because of

insufficiency of the evidence at trial. *Burks*, 437 U.S. at 18, 57 L. Ed. 2d at 14, 98 S. Ct. at 2150-51.

Prior to *Bullington*, the Court had held, unequivocally, that if a defendant was convicted, sentenced to life imprisonment and then won reversal of his conviction, the State could seek the death penalty again upon retrial. (See *Stroud v. United States* (1919), 251 U.S. 15, 64 L. Ed. 103, 40 S. Ct. 50.) However, *Stroud*, as the *Bullington* Court distinguished, did not involve a separate sentencing proceeding and the sentencer had full discretion to choose the sentence, wholly unguided by legislative standards. *Bullington*, 451 U.S. at 439, 68 L. Ed. 2d at 279, 101 S. Ct. at 1858.

The Court in *Bullington* also distinguished *United States v. DiFrancesco* (1980), 449 U.S. 117, 66 L. Ed. 2d 328, 101 S. Ct. 426, the only case in which the Court had previously considered a bifurcated sentencing proceeding. *DiFrancesco* involved a government appeal of a sentence imposed under the Federal "dangerous special offender" statute. In *Bullington*, the Court compared each of the trial-like factors present under Missouri's capital sentencing procedure with those factors present under the dangerous-special-offender sentencing scheme. The Court initially focused on the nature of the re-sentencing proceeding. In that regard, the Court found *DiFrancesco* inapposite because the Federal procedures involved at resentencing included appellate review of a sentence " 'on the record of the sentencing court,' " rather than a *de novo* fact finding. Further, the Court noted that in *DiFrancesco* the sentencer, a Federal judge, had a large amount of discretion in imposing sentence and the prosecution's burden was merely a preponderance of the evidence. *Bullington*, 451 U.S. at 440-41, 66 L. Ed. 2d at 280, 101 S. Ct. at 1858-59.

Before proceeding with our analysis, we note that this case does not represent this court's first opportunity

to consider the reaches of *Bullington*. In *People v. Davis* (1986), 112 Ill. 2d 78, this court acknowledged that many of the characteristics of the Missouri capital sentencing proceeding which triggered the application of double jeopardy in *Bullington* are present in our capital sentencing proceeding. Thus, double jeopardy may be implicated in resentencing in capital cases in Illinois. (Accord *People v. Page* (1993), 155 Ill. 2d 232.) Neither the United States Supreme Court nor this court, however, has had occasion to decide whether the exception carved out in *Bullington* extends to noncapital sentencing procedures. But see *Bohlen v. Caspari* (8th Cir. 1992), 979 F.2d 109, *cert. granted* (1993), ____ U.S. ____, 125 L. Ed. 2d 660, 113 S. Ct. 2958 (Missouri case holding *Bullington* applicable to persistent-offender proceedings).

### Application of *Bullington v. Missouri*

Defendants assert that the sentencing procedures under the Habitual Criminal Act (Act) (Ill. Rev. Stat. 1991, ch. 38, par. 33A—1) and the Class X sentencing provision (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(c)(8)) closely resemble the sentencing procedure in *Bullington*. Thus, they entreat us to extend the *Bullington* exception to these noncapital recidivist sentencing procedures. For reasons which follow, we decline to do so.

The Court in *Bullington* did not address whether the presence of any one of the three trial-like factors upon which it relied would have been sufficient, alone, to support its trial analogy. Further, the Court seemingly did not place greater significance on any one factor over another. We believe, however, that it was the combined force of all three factors which supported the Court's analogy.

A review of Federal decisional law in this area confirms our view. In cases where the *Bullington* exception has been extended to noncapital sentencing procedures,

all three factors have been present. See, *e.g., Durosko v. Lewis* (9th Cir. 1989), 882 F.2d 357 (habitual-criminal sentencing is tried to a jury, prior convictions must be proved beyond a reasonable doubt, and sentencer must sentence defendant to natural life); *Bullard v. Estelle* (5th Cir. 1982), 665 F.2d 1347, 1357-58 (State required to prove at trial that defendant committed two prior felony offenses, allegations of prior offense must be proved beyond a reasonable doubt, and sentencer has no discretion in sentencing third-time felony offenders); *Bohlen v. Caspari* (8th Cir. 1992), 979 F.2d 109 (defendant has rights of confrontation, cross-examination and the opportunity to present evidence, State must prove facts pleaded beyond a reasonable doubt, and trial court has two alternatives: to find that the defendant is a persistent offender or not).

We, likewise, tailor our analysis to correspond with the analyses applied in *Bullington* and its progeny. Accordingly, we hold that for *Bullington* to apply, all three trial-like factors must be present. The absence of any one will defeat the analogy.

## ANALYSIS

### Habitual-Offender Sentencing

The Habitual Criminal Act mandates the imposition of a natural life sentence on a defendant convicted of three Class X felonies within a 20-year period. (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1.) Section 33B—2 of the Act sets out the procedures that apply when the State seeks to have a court sentence a defendant as a habitual criminal. Section 33B—2(a) provides, in pertinent part:

> "After a plea or verdict or finding of guilty and before sentence is imposed, the prosecutor may file with the court a verified written statement signed by the State's Attorney concerning any former conviction of an offense set forth in Section 33B—1 rendered against the defend-

ant. The court shall then cause the defendant to be brought before it; shall inform him of the allegations of the statement so filed, and of his right to a hearing before the court on the issue of such former conviction and of his right to counsel at such hearing; and unless the defendant admits such conviction, the court shall hear and determine such issue, and shall make a written finding thereon. If a sentence has previously been imposed, the court may vacate such sentence and impose a new sentence in accordance with Section 33B—1 of this Act." (Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(a).)

A defendant must be "adjudged" a Class X offender to be sentenced under the Habitual Criminal Act. See Ill. Rev. Stat. 1987, ch. 38, par. 33B—1(a).

It is settled that habitual-offender legislation neither creates a separate offense nor directly involves the prior crimes. The prior-conviction evidence for purposes of sentencing enhancement is merely a matter of aggravation going solely to the punishment to be imposed; it is not an ingredient of the main offense charged. *People v. Kirkrand* (1947), 397 Ill. 588, 590; *People v. Lawrence* (1945), 390 Ill. 499, 505; *People v. Atkinson* (1941), 376 Ill. 623, 625; see also A. Campbell, Law of Sentencing §7.5 (2d ed. 1991).

Defendants assert that the procedure for determining a defendant's habitual criminal status parallels, in all important respects, the capital sentencing procedure considered in *Bullington*. Defendants specifically note the following similarities between our habitual-criminal sentencing procedure and the capital sentencing procedure in *Bullington*: (1) a separate hearing is held on the issue of defendant's habitual-criminal status; (2) the prosecutor must prove the habitual-criminal status beyond a reasonable doubt; and (3) the trial judge is not given "unbounded discretion" to select the defendant's punishment but must, instead, impose a sentence of natural life imprisonment. These factors, defendants contend, suffi-

ciently mark the procedure with the "hallmarks of the trial on guilt and innocence" to trigger double jeopardy protections.

We note at the outset that there is a split of authority in the Federal circuits on whether double jeopardy applies to similar habitual-offender sentencing procedures. *Bohlen*, 979 F.2d 109, *Durosko*, 882 F.2d 357, *Nelson v. Lockhart* (8th Cir. 1987), 828 F.2d 446, *rev'd on other grounds* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285, and *Bullard*, 665 F.2d 1347, *vac. on other grounds* (1983), 459 U.S. 1139, 74 L. Ed. 2d 987, 103 S. Ct. 776, each hold that double jeopardy applies. *Denton v. Duckworth* (7th Cir. 1989), 873 F.2d 144, and *Linam v. Griffin* (10th Cir. 1982), 685 F.2d 369, however, reach a contrary result.

Incidentally, the court in *Denton* distinguished Indiana's habitual-offender statute from the *Bullington* sentencing proceeding on the basis that the *Bullington* proceeding involved consideration of particular facts underlying the substantive offense, while Indiana's habitual-offender statute did not. (*Denton*, 873 F.2d at 147.) A similar rationale was offered by the court in *Linam* for its rejection of *Bullington*. Further, we note, as did the concurring Justice in *Linam*, that the focus in *Bullington* was merely whether the sentencing proceeding resembled trial on the issue of guilt (see *Linam*, 685 F.2d 369 (Anderson, J., concurring)); the Court made no mention of the uniqueness of the death sentence as a rationale for its holding.

At first glance, our habitual-criminal sentencing procedure appears to share sufficient commonalities with the sentencing procedure in *Bullington* to warrant extension of the exception here. However, we must be careful to avoid diminishing the value of *Bullington* by engaging in merely mechanical application. The focus of our inquiry, as was the Court's in *Bullington*, is whether

our proceeding resembles a defendant's trial on the issue of guilt.

We first examine the "separate hearing" factor. Under our criminal code, a sentencing hearing is required after any determination of guilt. (See Ill. Rev. Stat. 1991, ch. 38, par. 1005—4—1(a).) Thus, to conclude that the sentencing hearing is trial-like simply because it is held separately from the determination of guilt would potentially subject all sentencing proceedings in Illinois to the *Bullington* exception. *Bullington* does not compel such a result. We, therefore, must consider those unique aspects of the separate sentencing proceeding which, in *Bullington*, rendered that factor trial-like.

Under the sentencing provision considered in *Bullington*, the jury hears evidence in extenuation, mitigation and aggravation of punishment, subject to the laws of evidence. Only such evidence in aggravation as the prosecution has made known to the defendant prior to his trial is admissible at the hearing. In addition, the jury hears argument concerning the punishment to be imposed. The Missouri statute also expressly provides for final arguments to the jury, directing that the prosecuting attorney shall open and that the defense counsel shall conclude the argument to the jury. Further, prior to the jury's deliberations, the judge gives appropriate instructions to guide the jury in its deliberations. (*Bullington*, 451 U.S. at 433 n.4, 68 L. Ed. 2d at 275 n.4, 101 S. Ct. at 1855 n.4.) Additionally, a jury that imposes the death penalty must designate in writing the aggravating circumstance that it finds beyond a reasonable doubt. (*Bullington*, 451 U.S. at 434, 68 L. Ed. 2d at 276, 101 S. Ct. at 1856.) Finally, the Court in *Bullington* thought it "not without some significance that the Missouri statute [spoke] specifically of the [capital sentencing] hearing in terms of a continuing 'trial.'" *Bul-*

*lington,* 451 U.S. at 438 n.10, 68 L. Ed. 2d at 279 n.10, 101 S. Ct. at 1858 n.10.

As is apparent, many of the due process protections afforded a defendant at trial on the issue of guilt are provided under Missouri's separate capital sentencing provision. These same evidentiary and procedural safeguards, however, are not present under Illinois' separate habitual-offender sentencing procedure. Except for the records certification requirement, noticeably absent is any mandate that the State comply with formalistic rules of evidence applicable at trial. Also, the State is not required, prior to trial, either to inform the defendant of its intent to seek a habitual-offender determination or to reveal what evidence it plans to present at sentencing. See *People v. Tobias* (1984), 125 Ill. App. 3d 234, 242 (holding that a defendant need not be notified prior to the sentencing hearing itself; notice is sufficient if the petition is first read to the defendant at the hearing and he is allowed to reply to the recidivist charges before a sentence is imposed); see also Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(a) (Act expressly provides that prior conviction shall not be alleged in the indictment).

Further, although presumably the order of proceeding at sentencing parallels the order at trial, our Act makes no express provision concerning the order of proof or argument. Additionally, a point deemed important by the Court in *Bullington,* the Act refers to the sentencing proceeding as a hearing, *not* as a trial.

Even more significant, the defendant, unlike at trial, is not entitled to a jury to decide the issue of habitual-criminal status. In the context of a criminal trial "the Constitution mandates a jury to prevent abuses of official power by insuring, where demanded, community participation in imposing serious deprivations of liberty and to provide a hedge against corrupt, biased, or political justice." (*McKeiver v. Pennsylvania* (1971), 403 U.S.

528, 551, 29 L. Ed. 2d 647, 664, 91 S. Ct. 1976, 1989 (White, J., concurring).) The absence of a jury requirement here evidences that any similar concern in habitual-criminal sentencing proceedings is not operative.

We are aware that the court in *Bohlen*, 979 F.2d at 114 n.6, noted that whether a persistent-offender determination is made by judge or jury does not affect a determination of whether *Bullington* applies in noncapital cases. The distinction we make here, however, is on the issue of entitlement to a jury.

Finally, we deem it significant that the State's burden of proof for purposes of habitual-criminal sentencing may be satisfied by the presentation of certified records of the defendant's prior convictions. (See *People v. Davis* (1983), 95 Ill. 2d 1, 31.) Notably, such proof is developed outside of the courtroom. As a result, the proceeding does not involve the same degree of adversarial testing characteristic of the evidentiary phase of trial. In contrast, the statute examined in *Bullington* requires the State to develop the evidence that proves an aggravating factor during the course of the proceeding, as in a trial.

Under our Act, a defendant is not afforded the full panoply of due process rights which are necessarily afforded a criminal defendant at the evidentiary phase of trial. Those standards which, at trial, govern the admissibility of evidence and precisely define the manner in which the court and parties are to proceed are absent. The legislature has fashioned the habitual-criminal sentencing proceeding to be less formalized than a trial. Indeed, the paucity of due process protections at sentencing supports the conclusion that the legislature has deemed the defendant's interests at this stage of the proceeding to warrant fewer of those protections than at trial. We conclude that the separate hearing procedure under our Act bears insufficient formalities of a trial to

render that factor analogous to the separate hearing procedure in *Bullington* and to this defendant's trial on the issue of guilt.

We recognize that the Act provides certain evidentiary and procedural safeguards, such as the requirement that the records of the defendant's prior convictions be certified, that the defendant be informed of the allegations of the prior convictions, and that the court make written findings on the issue of the defendant's habitual criminality. In this regard, the habitual-criminal sentencing proceeding is, at least, more formalistic than sentencing under our general sentencing provision. (*Cf.* Ill. Rev. Stat. 1991, ch. 38, par. 1005—4—1(a); see also *People v. Williams* (1992), 149 Ill. 2d 467.) However, these limited procedural and evidentiary safeguards do not sufficiently color the separate sentencing proceeding with the shades of trial such that the two proceedings appear analogous.

Defendants, proceeding on the premise that the degree of proof required in a habitual-criminal proceeding is beyond a reasonable doubt, assert this and the lack of sentencing discretion as additional commonalities with the procedure examined in *Bullington* and with a trial.

Our finding that the separate sentencing factor lacks the formality of a trial defeats the analogy of the habitual sentencing procedure to a trial on the issue of guilt. Thus, even accepting the presence of the other two trial-like factors, we hold that the habitual-criminal sentencing proceeding does not so "approximate the ordeal of trial" to bring the proceeding within the exception of *Bullington*.

## Class X Offender Sentencing

Defendants next contend that sentencing under the Class X provision resembles trial on the issue of guilt and, therefore, *Bullington* should apply. We note at the

outset the disagreement in our appellate court concerning whether double jeopardy would bar the State's second attempt to sentence a defendant as a Class X offender on remand where the State failed to present sufficient proof for Class X sentencing in the original sentencing proceeding. *People v. Shelton* (1991), 208 Ill. App. 3d 1094, *People v. Brooks* (1990), 202 Ill. App. 3d 164, and *People v. Washington* (1990), 195 Ill. App. 3d 520, each holds that double jeopardy is not implicated. The court in *People v. Hamilton* (1990), 198 Ill. App. 3d 108, however, reached a contrary conclusion. Because we find none of the *Bullington* trial-like factors operational for Class X sentencing, we agree with *Shelton, Brooks* and *Washington*.

We begin our analysis with a brief statement of the Class X offender provision. If a defendant over the age of 21 has been convicted of a Class 1 or a Class 2 felony, after having been twice convicted of any Class 2 or greater class felonies in Illinois, and such charges are separately brought and tried and arise out of a different series of acts, the defendant must be sentenced as a Class X offender. See Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8).

Sentencing procedures for Class X offenders are conducted pursuant to section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(a)). Section 5—4—1 provides in part:

"(a) *** At the hearing the court shall:

(1) consider the evidence, if any, received upon the trial;

(2) consider any presentence reports;

(3) consider evidence and information offered by the parties in aggravation and mitigation;

(4) hear arguments as to sentencing alternatives;

(5) afford the defendant the opportunity to make a statement in his own behalf." Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(a).

Noticeably absent under section 5—4—1 are those strict evidentiary and procedural rules attendant at trial. The only requirement for the admissibility of evidence in Class X sentencing under section 5—4—1 is that the evidence be relevant and reliable. (*Williams*, 149 Ill. 2d at 490, citing *People v. Free* (1983), 94 Ill. 2d 378, 422-23; see *People v. Adkins* (1968), 41 Ill. 2d 297; *Williams*, 149 Ill. 2d 467 (instructive on the manner in which evidence is admitted at sentencing proceedings).) Unlike sentencing under the Habitual Criminal Act, the State need not present certified records of the defendant's prior convictions for purposes of showing Class X eligibility. Presentence reports are adequate. *Williams*, 149 Ill. 2d at 493.

Further, in *Williams*, 149 Ill. 2d 467, this court held that the State had no burden to prove a defendant's prior convictions beyond a reasonable doubt.

Finally, concerning sentencing discretion, we observe that no sentencing judge has complete discretion to fashion what he or she deems an appropriate sentence. Sentencing authorities are constrained in those decisions by statute. In the case of the Class X offender, the sentencer, while required by statute to impose a sentence from an elevated sentencing range, is nonetheless permitted discretion to determine an appropriate sentence within that range. Such restriction is no different from sentencing restrictions generally. However, the sentencer's discretion under section 5—4—1 is not analogous to the lack of discretion present in *Bullington*.

We conclude that because none of the trial-like factors present in *Bullington* are present under our Class X sentencing proceeding, double jeopardy does not bar a subsequent attempt to prove Class X eligibility at resentencing.

Despite the absence of these factors, defendants maintain that double jeopardy applies. They insist that the burden of proof in Class X sentencing procedures is at least by a preponderance of the evidence. They then assert the doctrine of collateral estoppel as applicable to this lesser standard and, therefore, that double jeopardy is implicated.

The reasonable doubt standard applies to criminal proceedings (see 2 J. Strong, McCormick on Evidence §339 (4th ed. 1992)), to which double jeopardy attaches. In contrast, the preponderance of the evidence standard is generally reserved for civil matters (see 2 J. Strong, McCormick on Evidence §339 (4th ed. 1992)), to which double jeopardy does not attach (see *Village of Maywood v. Houston* (1957), 10 Ill. 2d 117, 120). Thus, the requirement of a mere preponderance quantum of proof effectively defeats any analogy to trial on the issue of guilt and, therefore, any claim that jeopardy has attached.

Further, to the extent that defendants suggest collateral estoppel as an independent basis to bar the State's second attempt to prove Class X eligibility, we reject the suggestion. The doctrine of collateral estoppel, embodied in the fifth amendment's guarantee against double jeopardy, applies to bar relitigation of a valid and final judgment. (See *Ashe v. Swenson* (1970), 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194; see also *People v. Frias* (1983), 99 Ill. 2d 193.) Sentencing determinations do not carry the same finality as the judgment of guilt or innocence on the merits. (*DiFrancesco*, 449 U.S. 117, 66 L. Ed. 2d 328, 101 S. Ct. 426.) Thus, in the context of non-trial-like sentencing proceedings, we afford the doctrine of collateral estoppel no viability independent of the double jeopardy clause.

We note defendants' additional argument that *res judicata* or law of the case bars a second attempt to prove Class X eligibility. Defendants cite to no authority

to support the conclusion that either concept, like collateral estoppel, is embodied in double jeopardy. Again, we note, however, that sentencing determinations do not carry the same finality as do final judgments. Thus, defendants' reliance on these concepts is also unavailing.

We hold that Class X sentencing, which is governed by section 5—4—1, does not bear sufficient "hallmarks of a trial" on the issue of defendants' guilt. Thus, the *Bullington* exception is inapplicable to bar resentencing of defendants as Class X offenders; double jeopardy is not implicated.

## Policy Considerations

Defendants next urge several policy considerations in support of their assertion that double jeopardy principles are applicable to the noncapital sentencing procedures at issue here. Specifically, defendants assert that as a matter of fairness, the State should not be given an additional opportunity to meet its burden of proof. Second, defendants assert that to bar a second attempt at enhanced sentencing will not result in the defendants' escaping all punishment, merely the most severe punishments. And third, defendants urge that principles of judicial economy would be promoted by the application of double jeopardy.

Double jeopardy assures that the prosecution and punishment of an individual have the degrees of finality and fairness essential to the administration of criminal law. (See Note, *A Definition of Punishment for Implementing the Double Jeopardy Clause's Multiple-Punishment Prohibition*, 90 Yale L.J. 632, 634 (1981); see also 6 L. Pieczynski, Illinois Practice §21.3 (1989).) The principle of fairness insures that the defendant receives a punishment, set up by the court and authorized by the legislature, that is commensurate with his criminal liability. See 90 Yale L.J. at 634.

Illinois has a strong interest in protecting its citizenry from individuals who, by their repeated criminal conduct, demonstrate an incapacity to reform. Thus, in our view, the State's ability, at resentencing, to pursue a legislatively defined enhanced penalty for recidivists is not inconsistent with the fairness component of double jeopardy. Furthermore, it is not sufficient merely to conclude that the repeat offender will not, as a result of a double jeopardy bar, escape all punishment. Society's concern is not simply that the criminal offender will be punished, but that he will receive an appropriate punishment. Finally, the State's interest in protecting its citizenry from the offenses of repeat offenders far outweighs any interest in judicial economy.

### Illinois' Double Jeopardy Clause

Defendants finally contend that if the Federal Constitution will not support application of double jeopardy principles to these noncapital recidivist sentencing procedures, then the Illinois Constitution should. Defendants largely argue for our departure from the "lockstep doctrine" in construing our double jeopardy clause.

Under the "lockstep doctrine" this court would apply decisions of the United States Supreme Court based on Federal constitutional provisions to the construction of comparable provisions of the State constitution. (*People v. DiGuida* (1992), 152 Ill. 2d 104, 118.) As noted earlier in this opinion, the Supreme Court has not yet spoken on the extension of double jeopardy principles to noncapital sentencing procedures. (But see *Bohlen v. Caspari* (8th Cir. 1992), 979 F.2d 109, *cert. granted* (1993), ___ U.S. ___, 125 L. Ed. 2d 660, 113 S. Ct. 2958.) Because the Supreme Court has not interpreted the Federal double jeopardy provision in the context of noncapital sentencing proceedings, defendants' argument for

departure from the lockstep approach in this regard is unavailing.

The question, then, is simply whether our constitution may be interpreted to apply double jeopardy principles to noncapital sentencing procedures.

In that regard, defendants assert that the wording of Illinois' double jeopardy clause supports a broader interpretation than does the wording in the Federal clause. Specifically, defendants refer to the phraseology "of life and limb" in the Federal double jeopardy clause as less expansive than the language in the Illinois clause ("no person shall be twice put in jeopardy for the same offense").

We reject defendants' attempt at a restricted construction of the Federal clause. The clause "of life and limb" has its origins in the common law. The phrase's literal meaning limited double jeopardy protection to capital offenses. (See Kelly, *In the Wake of DiFrancesco: Derogation of the Multiple Punishment Bar of the Double Jeopardy Clause*, 17 Suffolk U.L. Rev. 923 (1983).) It is axiomatic that the double jeopardy clause in the Federal Constitution applies, without limitation, to any criminal offense. Similarly, our double jeopardy clause applies to all criminal offenses. Thus, the difference in wording offers no substantial basis to support a conclusion that Illinois' clause provides broader protections than does its Federal counterpart. Aside from the difference in language, defendants have not directed our attention to anything, either in the debates or the committee reports of the constitutional convention, which would indicate that the double jeopardy provision in our constitution is intended to be construed differently than the Federal provision. See *People v. Tisler* (1984), 103 Ill. 2d 226, 245.

Defendants next suggest to us that to adequately safeguard the competing interests of judicial efficiency

and finality, this court should interpret Illinois' double jeopardy provision to afford the defendants "protection from ordeal and risk."

We have not, heretofore, recognized judicial efficiency as a value underlying double jeopardy protections. Traditionally, the interests which form the foundation of double jeopardy are principles of fairness and finality. (See *People v. Gray* (1977), 69 Ill. 2d 44, 51.) We have already addressed the fairness issue in our discussion of defendants' policy considerations.

Double jeopardy protections represent a balancing of the defendant's interest in finality against society's interest in effective law enforcement. We regard a defendant's interest in finality with respect to sentencing as legitimate. However, we believe that a defendant's interest in the eventual length of his sentence as compared to his interest regarding a determination of guilt or innocence are not coequal. Specifically, a defendant has less of an interest in the length of his incarceration than in not being incarcerated at all. For that reason, many of the due process protections afforded a defendant at trial are not extended to sentencing proceedings. Thus, we conclude that any finality interest in sentencing is far outweighed by the State's countervailing interest to adequately protect its citizenry and to punish recidivists. See Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich. L. Rev. 1001 (1980).

We conclude that Illinois' double jeopardy clause provides no protection to the non-trial-like sentencing proceedings at issue here.

## CONCLUSION

In No. 71542 (People v. Levin), the appellate court affirmed the defendant's conviction but vacated his sentence and directed that, upon remand, the trial court not

resentence the defendant as a Class X offender. For the reasons stated, the appellate court's directions as to the resentencing of defendant Levin are vacated; in all other respects the judgment is affirmed. In Nos. 71820 (People v. Tyson), 72736 (People v. Knoop), 72929 (People v. Johns), and 73108 (People v. Carter), the judgments of the appellate court are affirmed.

*No. 71542—Affirmed in part*
*and vacated in part;*
*No. 71820—Affirmed.*
*No. 72736—Affirmed.*
*No. 72929—Affirmed.*
*No. 73108—Affirmed.*

JUSTICE NICKELS took no part in the consideration or decision of this case.