Rule 23 Order filed

June 25, 1999;

Motion to publish granted

August 5, 1999.

NO. 5-98-0123

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

                                      )  Circuit Court of

     Plaintiff-Appellee,              )  St. Clair County.  

                                      )  

v.                                    )  No. 97-CF-379

                                      )  

ROGER McPHERSON,                      )  Honorable

                                      )  Robert P. LeChien, 

     Defendant-Appellant.             )  Judge, presiding.  

________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a jury trial, defendant, Roger McPherson, was found guilty of aggravated criminal sexual assault (see 720 ILCS 5/12-14(a)(1) (West 1996)), armed robbery (see 720 ILCS 5/18-2(a) (West 1996)), aggravated kidnapping (see 720 ILCS 5/10-2(a)(5) (West 1996)), and vehicular invasion (see 720 ILCS 5/12-11.1 (West 1996)) and was sentenced to 26 years in the Department of Corrections.  Defendant appeals his convictions and raises the following issues: (1) whether defendant's second trial violated the double jeopardy clauses of the United States and Illinois Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10); (2) whether the trial court erred in denying defendant's motion for a change of venue; and (3) whether defendant was proven guilty beyond a reasonable doubt.  We affirm.  

FACTS

On April 10, 1997, a four-count complaint was filed against defendant for crimes allegedly occurring on August 26, 1996, involving the victim, whom we will identify as L.L.  Count I charged defendant with aggravated criminal sexual assault.  Count II charged defendant with armed robbery for the theft of a cellular phone and $150 in cash from the victim.  Count III charged defendant with aggravated kidnapping.  Count IV charged defendant with vehicular invasion.  Defendant filed a motion for change of venue on October 17, 1997, on the basis that pretrial publicity prevented defendant from receiving a fair trial.  Attached to the motion was a copy of a local newspaper article published on Wednesday, September 24, 1997, which reported that defendant pled guilty to the charges involving the victim but, within an hour, withdrew his guilty plea and was seeking a jury trial.  The article outlined details of the alleged crime.  Defendant's motion was denied and a jury trial ensued, beginning on October 28, 1997.  

A jury was empaneled and two days of testimony followed.  On October 31, 1997, the trial court declared a mistrial after it was discovered that one of the jurors failed to disclose that he was on probation for a felony conviction.  On December 4, 1997, defendant filed a motion to dismiss, arguing that a second trial should be barred on double jeopardy grounds.  The trial court denied defendant's motion, and a second trial was conducted, beginning on December 9, 1997.  

The victim, age 27, testified that she was a waitress at PT's in Centreville and left her job at approximately 2 a.m. on August 26, 1996.  While driving home, she stopped at a stoplight. A grey van was behind her.  A man with a baseball cap, brightly colored striped shirt, and jeans got out of the van and approached her car.  The man was holding a gun.  He came to her window and told her to move over.  The man got in her car and started driving.  The man held a gun to her head and asked her for money. She gave him $150.  He told her to take off her clothes.  The victim complied.  He then stopped the car and told her to perform oral sex on him.  Again, the victim complied.  

A second man, the driver of the grey van, also entered her vehicle and had vaginal intercourse with her.  The second man ejaculated after he pulled his penis out of the victim.  The first man then changed places with the second man and also had vaginal intercourse with the victim.  He ejaculated inside the victim.  The first man wiped himself on the victim's shirt.  The men told the victim not to look at them throughout this ordeal.  The victim was unable to identify defendant, either through a photo lineup or at trial.  The two men took the victim's cellular phone and driver's license.  They told the victim not to report the incident to the police or they would kill her.  The victim no longer lived at the address listed on her driver's license, but she was, nevertheless, frightened and did not report the incident to the police immediately after it occurred.  Instead, the victim drove home, took a shower, and went to bed.  

The next day, the victim returned to work but was overcome with emotion.  A fellow employee asked her what was wrong, and the victim finally told her what happened.  The coworker insisted that the victim notify the police.  The victim talked to the police that afternoon.  Detective Sergeant Jack Kaffer of the St. Clair County Sheriff's Department went to the victim's residence and retrieved the clothes the victim was wearing at the time of the attack and preserved them as evidence.  The police also searched the victim's car for evidence.  No prints or other materials found in the car matched defendant.  The victim went to the hospital, where a rape kit was assembled.  The victim's phone records from her cell phone were tracked.  Two phone calls were made after the incident.  One call was made to Lavonda Richmond and one call was made to Jeremy Clay.  Both were friends of defendant.  Clay became a suspect in the case but was killed prior to defendant's trial and, therefore, was not available to testify.  At Clay's residence, the police seized a cellular phone similar to the victim's.  However, a check of the phone's serial number showed that they were not the same phone. 

After talking to Clay, police interviewed Kenneth McCline, who admitted to the crimes against the victim.  McCline implicated defendant.  He agreed to testify against defendant in exchange for a reduced sentence of 12 years’ imprisonment.  At trial, McCline corroborated the victim's testimony.  

The most damaging testimony at trial came from forensic scientists who testified on behalf of the State.  Defendant had voluntarily given samples of body fluids, blood, hair, and saliva, which were compared to samples taken from the victim's clothes and vaginal swabs. The State's DNA experts testified that defendant's DNA matched the DNA found on the victim's clothes and in her vagina.  Julie Glasner, a DNA analyst with the Illinois State Police, testified that there was one chance in five trillion that defendant was not the donor of the semen found in the victim and on her clothes.  Jeremy Clay submitted his own samples prior to his death.  No match was made on the DNA submitted by Clay.  

The only witness to testify on behalf of defendant was Keisha Hudson, defendant’s girlfriend.  The two lived together in August 1996.  While she could not specifically remember what occurred on August 25 and 26, 1996, she testified that there was not an evening in the month of August 1996 that defendant returned home as late as 3 or 4 a.m.

After hearing all the evidence, the jury found defendant guilty on all four counts.  Defendant was sentenced to 26 years in the Department of Corrections.  Defendant now appeals. 

ISSUES

The first issue we are asked to consider is whether defendant's second trial violated the double jeopardy clauses of the United States and Illinois Constitutions.  Defendant contends that the trial court abused its discretion when it denied defendant's motion to dismiss on grounds of double jeopardy after a mistrial was declared, because no "manifest necessity" existed to declare the mistrial.  The State responds that the trial court did not abuse its discretion in granting a mistrial and denying defendant's motion to dismiss on double jeopardy grounds.  We agree with the State.

The double jeopardy clauses of the United States and Illinois Constitutions provide that no person is to be put in jeopardy twice for the same offense.  U.S. Const., amend. V; Ill. Const. 1970, art. I, §10.  In other words, the protection afforded by the double jeopardy clause prohibits the retrial of a defendant for the same offense after a conviction or an acquittal.  See 
People v. Levin
, 157 Ill. 2d 138, 143-44, 623 N.E.2d 317, 320 (1993).  Where the jury has been empaneled and evidence taken, jeopardy attaches.  See 
People v. Johnson
, 113 Ill. App. 3d 367, 374, 447 N.E.2d 502, 507 (1983).  However, a second trial is not necessarily barred because jeopardy attached in the first proceeding; rather, it depends on the circumstances of each case.  See 
People v. Camden
, 115 Ill. 2d 369, 376-77, 504 N.E.2d 96, 99 (1987).  A trial court may properly declare a mistrial over the defendant's objection when "manifest necessity" or "the ends of public justice" require it to do so.  See 
Illinois v. Somerville
, 410 U.S. 458, 462, 35 L. Ed. 2d 425, 93 S. Ct. 1066, 1070 (1973). "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent, and even over his objection, and he may be retried consistently with the Fifth Amendment."  
Gori v. United States
, 367 U.S. 364, 368, 6 L. Ed. 2d 901, 81 S. Ct. 1523, 1526 (1961).  

In the case at bar, defendant filed a motion to dismiss on the basis of double jeopardy on December 4, 1997.  Defendant alleged that after two days of testimony in the first trial, "the State moved to dismiss a juror on the basis that the juror had not advised the Court during 
voir dire
 that he had a previous felony conviction and was on felony probation at the time of trial."  The motion went on to allege that no showing of manifest necessity had been made to support the mistrial.  

A report of proceedings from October 31, 1997, indicates that the State became aware that one of the jurors, Jerry Hill, was previously convicted of aggravated battery.  According to the prosecutor, the trial court had asked potential jurors if any of them had been convicted of a felony or crime of violence.  Hill failed to disclose his previous conviction for aggravated battery.  The prosecutor explained the facts of the case involving Jerry Hill, including that he had beaten a man and had burned him with a clothing iron.  This necessitated the victim being taken to the hospital and losing kidney function for a period of time.  Hill was placed on intensive probation and was still on probation at the time of defendant's trial.

The State submitted the testimony of George Chester, supervisor of intensive probation for St. Clair County, who testified that Hill was still on regular probation at the time of his testimony and had recently spent time in the St. Clair County jail on a petition to revoke probation.  The State maintained that juror Hill had actually spent seven days in the St. Clair County jail at the same time defendant was incarcerated on the instant charges.  

The trial court found that interviewing the juror would only taint the matter further and probably make him less likely to be a fair and impartial juror.  Throughout discussions of this matter, defense counsel insisted that defendant was not willing to go forward with the remaining 11 jurors.  A previous juror had already been dismissed, and the alternate was already in place.  

Section 115-4 of the Code of Criminal Procedure of 1963 states that “[t]he jury shall consist of 12 members.”  725 ILCS 5/115-4(b) (West 1996).  However, a defendant may waive this right.  See 
People v. Scudieri
, 363 Ill. 84, 87, 1 N.E.2d 225, 227 (1936).  Accordingly, the trial court urged defendant to reconsider whether he would proceed with the remaining 11 jurors.  After reconsidering, defendant declined.  The trial court then declared a mistrial because of the juror's failure to be candid, both to the State and to defendant.  The trial court further explained, "that being the case, the defendant is, of course, not compelled to agree to proceed with 11 and in the absence of that agreement, there is not a suitable jury panel to proceed and hence a mistrial would be declared."

Later, in ruling on defendant's motion to dismiss, the trial court made the following findings:

"Okay.  Well, the Court will incorporate its rulings and findings in the first trial of the case.  I think that the danger of this juror who remained under the control of the State to some extent was both to the defendant and to the State.  And I think his untruthful answers corrupted the process.  And under the circumstances then existing, the man could not have served and should not have served as a juror.  That in and of itself then got us to a point where we did not have twelve jurors.  And, therefore, a mistrial was necessitated.  And I believe that the manifest need was shown for a mistrial and for the exclusion of that witness at that time--excuse me--of that juror at that time."

We agree that manifest necessity existed.

The record reflects that the juror failed to indicate that he had previously been convicted of aggravated battery, even though he had specifically been asked whether he had ever been convicted of a felony or a serious crime. Moreover, the record also reflects that the juror actually spent time in the county jail with defendant.  The juror was still on probation at the time he was empaneled.  After Hill’s departure from the jury, only 11 jurors remained.  Defendant declined the court’s invitation to proceed with 11 jurors.  Under the circumstances, the trial court's rulings were sound, and we conclude that the manifest necessity requirement for declaring a mistrial was met.  Therefore, since the mistrial was properly declared, the second trial of defendant did not violate the constitutional prohibitions against double jeopardy.

The next issue raised by defendant is whether the trial court erred in denying defendant's motion for a change of venue.  Defendant contends that there were reasonable grounds to believe that prejudice against defendant existed because of the article which appeared in the local newspaper on September 24, 1997.  The article reported that defendant was charged with abducting and raping a local woman, admitted to the crime in a negotiated plea, but soon thereafter withdrew his plea and wanted to go to trial.  Defendant contends that he was denied a fair trial and that the case should be remanded for a new trial outside St. Clair County and its local newspaper coverage area.  The State responds that the record does not satisfactorily demonstrate that pretrial publicity prohibited the jury's ability to set aside its impressions and reach a verdict based upon the evidence and that, therefore, the trial court did not abuse its discretion in denying defendant's motion for a change in venue.  We agree with the State.

According to section 114-6 of the Code of Criminal Procedure of 1963, “A defendant may move the court for a change of place of trial on the grounds that there exists in the county in which the charge is pending such prejudice against him on the part of inhabitants that he cannot receive a fair trial in that county.” 725 ILCS 5/114-6 (West 1996).  A defendant is entitled to a change of venue as a result of pretrial publicity if there is a reasonable apprehension that the defendant cannot receive a fair and impartial trial.  See 
People v. Fort
, 248 Ill. App. 3d 301, 309, 618 N.E.2d 445, (1993).  Jurors need not be totally unaware of the case for a defendant to receive a fair trial.  See 
Fort
, 248 Ill. App. 3d at 309,  618 N.E.2d at 452. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based upon the evidence presented in court.  See 
Fort
, 248 Ill. App. 3d at 309, 618 N.E.2d at 452.  Accordingly, a change of venue should be granted only when it becomes apparent that it will not be possible to find 12 jurors sufficiently unfamiliar with the case to withstand a challenge for cause.  See 
Fort
, 248 Ill. App. 3d at 309, 618 N.E.2d at 452.  The decision whether to grant a change of venue is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.  See 
Fort
, 248 Ill. App. 3d at 309, 618 N.E.2d at 452.  

Here, defendant failed to object to the composition of the jury at the conclusion of jury selection.  We have reviewed the one article submitted by defendant and find it insufficient to prove that the motion for change of venue should have been granted.  We agree with the trial court that defendant failed to show prejudice because of the venue of the trial.  Therefore, a remand for a new trial in a different venue is not proper.

The final issue raised by defendant is whether he was proven guilty beyond a reasonable doubt.  Defendant challenges the sufficiency of evidence on the bases that: (1) the victim could not identify defendant in either a photo lineup or at trial, (2) no evidence, such as fingerprints, hair, or fibers from the victim's vehicle matched defendant, (3) Kenneth McCline's testimony was unreliable, (4) there were many opportunities for the contamination of DNA evidence, and (5) Jeremy Clay's involvement raises a reasonable doubt of defendant's guilt. The State replies that significant evidence of defendant's guilt was produced at trial and that defendant's specific contentions on appeal are either wholly speculative or generally insufficient to compel a result contrary to the jury's verdict.  We agree with the State.

When a challenge to the sufficiency of the evidence is presented on appeal, it is not the function of the reviewing court to retry a defendant.  See 
People v. Banks
, 161 Ill. 2d 119, 135, 641 N.E.2d 331, 339 (1994).  The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See 
People v. Moore
, 171 Ill. 2d 74, 95, 662 N.E.2d 1215, 1224 (1996); 
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985).  This standard applies to the appeals of all criminal convictions, regardless of whether the nature of the evidence presented is circumstantial or direct.  See 
People v. Pintos
, 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346 (1989).  The State is not required to exclude every reasonable hypothesis of innocence (see 
Pintos
, 133 Ill. 2d at 291, 549 N.E.2d at 346), and a jury need not be satisfied beyond a reasonable doubt of each link in the chain of circumstances.  See 
People v. Campbell
, 146 Ill. 2d 363, 380, 586 N.E.2d 1261, 1268 (1992).  It is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of defendant's guilt.  See 
Campbell
, 146 Ill. 2d at 380, 586 N.E.2d at 1268.  Moreover, when the determination of a defendant's guilt or innocence depends upon the credibility of the witnesses and the weight to be given their testimony, it is for the trier of fact to resolve any conflicts in the evidence.  See 
People v. White
, 209 Ill. App. 3d 844, 868, 567 N.E.2d 1368, 1382 (1991). We, as a reviewing court, are not to substitute our judgment.  See 
People v. Robinson
, 213 Ill. App. 3d 1021, 1025, 572 N.E.2d 1254, 1257 (1991). 

In the instant case, the victim testified she was sexually assaulted in her automobile on her way home from work and that the perpetrators took her cellular phone and $150 in cash.  While the victim was unable to identify defendant as her assailant, DNA evidence connected him to the crime. Although defendant has pointed out weaknesses in the State's proof, we cannot say that such efforts raised a reasonable doubt of defendant's guilt.  At best, defendant raises questions of fact and credibility that were properly left for resolution by the jury.  After reviewing the record as a whole, we conclude that the evidence was sufficient for a rational trier of fact to have found defendant guilty of aggravated criminal sexual assault, armed robbery, aggravated kidnapping, and vehicular invasion.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is hereby affirmed.

Affirmed.

CHAPMAN and MAAG, JJ., concur.

                                      NO. 5-98-0123

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

                                      )  Circuit Court of

     Plaintiff-Appellee,              )  St. Clair County.  

                                      )  

v.                                    )  No. 97-CF-379

                                      )  

ROGER McPHERSON,                      )  Honorable

                                      )  Robert P. LeChien, 

     Defendant-Appellant.             )  Judge, presiding.  

___________________________________________________________________________________

Rule 23 Filed:
 June 25, 1999

Motion to Publish Granted:
 August 5, 1999

Opinion Filed:
  August 5, 1999

___________________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Charles W. Chapman, J., and

Honorable Gordon E. Maag, J.,

Concur

___________________________________________________________________________________

Attorney
 Paul Christenson, North 11
th
 & Locust, P.O. Box 1011, Murphysboro, IL 62966

for
 

Appellant
 

___________________________________________________________________________________

Attorneys
 Honorable Robert Haida, State's Attorney, St. Clair County, 10 Public Square,

for
 Belleville, IL 62220

Appellee
 

Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Patrick D.

Daly, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Rt. 15

East, P.O. Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________________