NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190743-U

NO. 4-19-0743

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 28, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| GERALD JONES, | ) | No. 09CF244 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court granted the Office of the State Appellate Defender's motion to
withdraw as counsel and affirmed the trial court's judgment as no issue of arguable
merit could be raised on appeal.

¶ 2     Defendant, Gerald Jones, appeals from his conviction and sentence for aggravated

battery. On appeal, the Office of the State Appellate Defender (OSAD) moves to withdraw as

counsel on the ground no issue of arguable merit can be raised. Defendant disagrees with OSAD's

motion, believing there are several issues which are arguably meritorious. The State has filed a

response explaining why the issues addressed by defendant have no arguable merit. For the reasons

that follow, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 3                              I. BACKGROUND

¶ 4                              A. Information

¶ 5 In September 2009, the State charged defendant by information with aggravated battery (720 ILCS 5/12-4(b)(18), (e)(2) (West 2008)), a Class 2 felony. The State alleged, on or about July 19, 2009, defendant knowingly made an insulting or provoking physical contact with Dion Sullivan by throwing a liquid on Sullivan at a time when defendant knew Sullivan was a correctional officer and state employee engaged in the performance of his authorized duties. Thereafter, counsel was appointed to represent defendant.

¶ 6 B. Waiver of Counsel

¶ 7 In December 2009, the trial court, honorable Jennifer Bauknecht presiding, allowed defendant to waive his right to counsel and proceed *pro se*.

¶ 8 C. Jury Trial

¶ 9 In October 2010, the trial court, honorable Mark Fellheimer presiding, conducted a jury trial. Based upon the evidence presented, the jury found defendant guilty. The court later sentenced defendant to five years in prison, to be served consecutive to a term of life imprisonment he was already serving in another case. Defendant appealed.

¶ 10 D. Appeal

¶ 11 In October 2013, this court reversed and remanded for a new trial, finding the trial court failed to substantially comply with the requirements of Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before finding defendant waived his right to counsel. *People v. Jones*, 2013 IL App (4th) 120106-U.

¶ 12 E. Pretrial Proceedings on Remand

¶ 13 In December 2013, defendant, on remand, was appointed counsel. Over the next several years, defendant, through counsel, pursued various pretrial matters. Through counsel's efforts, defendant (1) asserted the affirmative defense of insanity, (2) obtained a forensic

psychiatric evaluation by Dr. Terry Killian, and (3) obtained scientific testing for the presence of human urine on Sullivan's uniform, the result of which showed no urine was present on the part of the uniform tested.

¶ 14         In September 2017, defendant asked to waive his right to counsel and proceed *pro se*. The trial court, Judge Bauknecht presiding, admonished defendant as to the charge he was facing and the possible penalties, as well as the right to counsel and the consequences of waiving that right. Defendant indicated he understood the court's admonishments and then persisted in his desire to waive the right to counsel and proceed *pro se*. The court accepted the waiver. Shortly thereafter, Judge Bauknecht recused herself, and the matter was reassigned to the Honorable Robert Travers.

¶ 15         Between October 2017 and January 2019, defendant pursued various pretrial matters. Defendant requested to subpoena numerous witnesses for trial, which the trial court granted in part and denied in part. With respect to the denied requests, defendant did not make formal offers of proof as to the expected testimony from the witnesses and, with regard to certain psychiatric witnesses, acknowledged none of those witnesses would opine he was insane at the time of the alleged offense. Defendant also requested additional testing of Sullivan's uniform, which the court denied. Last, defendant requested Judge Travers be substituted for cause and the venue be changed. In support, defendant alleged Judge Travers had engaged in unusual conduct, such as directing prison personnel to steal evidence in defendant's possession and making a series of adverse rulings. In addition, defendant alleged all Livingston County judges were biased against him. At a hearing, defendant presented no evidence supporting his allegations, and defendant's requests were denied.

¶ 16          In April 2018, defendant asked to waive his right to a jury trial and have a bench trial. The trial court admonished defendant about his right to a jury trial and the consequences of waiving that right. Defendant indicated he understood the court's admonishments. Defendant signed a written jury waiver. The court accepted the waiver. Defendant later requested to revoke his waiver, asserting his wavier was not made "intentionally." The court denied defendant's request.

¶ 17                              F. Bench Trial

¶ 18          Over a four-day period between February and September 2019, the trial court, Judge Travers presiding, conducted a bench trial.

¶ 19          The State presented testimony from Dion Sullivan. Sullivan testified, on July 14, 2009, he was working as a correctional officer at Pontiac Correctional Center. At the time, he was wearing a uniform identifying him as a correctional officer. Sullivan testified, while walking past a cell occupied by defendant, defendant threw a liquid at him from a milk container, striking him on his right side. Sullivan testified he did not remember what color the liquid was or whether it had chunks or spots in it, but whatever it had looked like, it appeared to him to be urine and feces. Sullivan did not recall precisely what he was doing at the time of the incident but acknowledged he may have been passing out mail or food trays.

¶ 20          The State also presented testimony from Karl Webber. Webber testified he investigated the July 14, 2009, incident. As part of his investigation, he spoke with defendant. According to Webber, defendant reported he threw a carton full of urine at a correctional officer because he was upset the officer gave his food tray to another inmate and had "words" with him. Defendant also reported he did not know if the carton or its contents struck the officer.

¶ 21    Defendant testified on his own behalf. According to defendant, on July 14, 2009, Sullivan gave his mail to another inmate and, when confronted by him, told him to shut up. Defendant became frustrated and "blanked out." He then grabbed a milk carton and threw it at Sullivan. Defendant testified he was going to fill the carton with feces and urine but was unable to do so because Sullivan was passing by his cell too quickly. Defendant was later escorted from his cell by other correctional officers, who reportedly beat him. Defendant then cut his arms and was placed on a suicide watch. He told Webber that Sullivan had given his mail to someone else. Defendant denied telling Webber he threw a carton full of urine at Sullivan.

¶ 22    Defendant also presented testimony from several correctional officers, as well as a report about the testing to Sullivan's uniform. Through his examination of the correctional officers, defendant showed (1) the officers had difficulty recalling specific details about the incident and (2) defendant filed a grievance after the incident alleging Sullivan gave defendant's mail to another inmate and cursed and threatened him. The report indicated the presence of a protein indicative of human urine was not discovered on part of Sullivan's uniform.

¶ 23    Finally, defendant presented testimony from Dr. Terry Killian. Dr. Killian testified about defendant's various diagnoses. Dr. Killian opined defendant was legally sane at the time of the July 14, 2009, incident and able to appreciate the criminality of his conduct. Dr. Killian further opined defendant's actions were motivated by anger.

¶ 24    Following closing arguments, the trial court found defendant guilty.

¶ 25                    G. Posttrial Proceedings

¶ 26    In September 2019, defendant filed a motion for a new trial, arguing (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the State knowingly presented perjured testimony from Sullivan and Webber, (3) his requests to subpoena witnesses for trial were

erroneously denied, (4) his requests to substitute Judge Travers and change the venue were erroneously denied, (5) his request for additional testing of Sullivan's unform was erroneously denied, and (6) Dr. Killian's testimony was biased.

¶ 27        In October 2019, the trial court conducted a hearing on defendant's posttrial motion. The court denied defendant's motion and then proceeded to sentencing. The court received a presentence investigation report, which detailed defendant's extensive history of disciplinary infractions while in custody, including staff assaults. No other evidence was offered. The State recommended five years in prison. Defendant declined to give a recommendation. Defendant also declined to give a statement in allocution. The court, in its oral pronouncement of its decision, indicated it considered the evidence, the recommendation, and the factors in aggravation and mitigation. The court sentenced defendant to five years in prison, to be served consecutive to his term of life imprisonment. Defendant immediately moved to reconsider his sentence, which the court denied.

¶ 28        This appeal followed.

¶ 29                                II. ANALYSIS

¶ 30                         A. The Sufficiency of the Evidence

¶ 31        OSAD contends it considered raising a challenge to the sufficiency of the evidence but concluded such a challenge would be without arguable merit. Defendant disagrees with OSAD's evaluation, suggesting a reasonable argument could be made that the State failed to prove every element of the charged offense.

¶ 32        When considering a challenge to the sufficiency of the evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt." (Internal quotation marks omitted.) *People v. Hardman*, 2017 IL 121453, ¶ 37, 104 N.E.3d 372. "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876.

¶ 33 Here, the evidence, viewed in the light most favorable to the prosecution, showed Sullivan was in uniform and passing out mail or food trays to inmates when defendant threw a milk container containing a liquid at Sullivan, striking him on the right side. Based upon this evidence, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt—that defendant intentionally or knowingly made physical contact of an insulting or provoking nature with Sullivan while Sullivan was engaged in the performance of his authorized duties as a state employee. 720 ILCS 5/12-3(a), 12-4(b)(18) (West 2008). Further, because defendant did not present any evidence to support an affirmative defense, the State was not required to disprove a defense to obtain defendant's conviction. See *People v. Lee*, 213 Ill. 2d 218, 224, 821 N.E.2d 307, 311 (2004). Accordingly, we agree with OSAD and find any challenge to the sufficiency of the evidence would be without arguable merit.

¶ 34 B. Testimony from the State's Witnesses

¶ 35 OSAD contends it considered raising a challenge to the State's elicitation, or failure to correct, alleged perjured testimony from Sullivan and Webber but concluded such a challenge would be without arguable merit. Defendant does not dispute OSAD's evaluation.

¶ 36 The due process clause prohibits the State from knowingly eliciting, or failing to correct, perjured testimony from one of its witnesses. U.S. Const., amends. V, XIV; *People v. Brown*, 169 Ill. 2d 94, 103, 660 N.E.2d 964, 968 (1995). Mere inconsistencies in testimony do not,

however, equate to perjury, nor do they show the State knowingly used perjured testimony. *People v. Moore*, 2012 IL App (4th) 100939, ¶ 31, 975 N.E.2d 1083.

¶ 37 Here, defendant suggested Sullivan and Webber perjured themselves because of inconsistencies in their testimony. Without more, the inconsistencies do not equate to perjury, nor do they show the State knowingly used perjured testimony. Accordingly, we agree with OSAD and find any challenge to the State's elicitation, or failure to correct, alleged perjured testimony from Sullivan and Webber would be without arguable merit.

¶ 38 C. Substitution of Judge for Cause

¶ 39 OSAD contends it considered raising a challenge to the denial of defendant's request to substitute Judge Travers for cause but concluded such a challenge would be without arguable merit. Defendant disagrees with OSAD's evaluation, suggesting a reasonable argument could be made that Judge Travers was biased against him.

¶ 40 To prevail on a motion to substitute a judge for cause, a defendant must show facts and circumstances indicating the judge is actually prejudiced against him. *People v. Patterson*, 192 Ill. 2d 93, 131, 735 N.E.2d 616, 638 (2000). "To meet this burden, the defendant must establish animosity, hostility, ill will, or distrust towards this defendant." (Internal quotation marks omitted.) *Id.* On review, we will not disturb a finding on a motion for substitution of judge unless that finding is against the manifest weight of the evidence. *People v. Mercado*, 244 Ill. App. 3d 1040, 1047, 614 N.E.2d 284, 288 (1993).

¶ 41 Here, defendant alleged Judge Travers had engaged in unusual conduct, such as directing prison personnel to steal evidence in defendant's possession that could potentially demonstrate prejudice. However, defendant did not present any evidence to support his allegation. He otherwise only complained about a series of adverse rulings by Judge Travers. Adverse rulings,

without more, do not establish prejudice. See *Patterson*, 192 Ill. 2d at 131. Accordingly, we agree with OSAD and find any challenge to the denial of defendant's request to substitute Judge Travers for cause would be without arguable merit.

¶ 42                                    D. Change of Venue

¶ 43         OSAD contends it considered raising a challenge to the denial of defendant's request to change the venue but concluded such a challenge would be without arguable merit. Defendant disagrees with OSAD's evaluation, suggesting a reasonable argument could be made that the Livingston County judges were biased against him.

¶ 44         A criminal defendant may move "for a change of place of trial on the ground that there exists in the county in which the charge is pending such prejudice against him on the part of the inhabitants that he cannot receive a fair trial in such county." 725 ILCS 5/114-6(a) (West 2018). If a court determines such prejudice exists, the court must transfer the case to a different county. 725 ILCS 5/114-6(b), (c) (West 2018). The decision whether to grant a change of venue is within a trial court's discretion and will not be disturbed absent an abuse of that discretion. *People v. McPherson*, 306 Ill. App. 3d 758, 765, 715 N.E.2d 278, 284 (1999).

¶ 45         Here, defendant requested a change of venue on the grounds that all the judges in Livingston County were biased against him. Even assuming bias among judges could constitute prejudice among the "inhabitants" of the "county," defendant presented no evidence showing, as indicated above, the judge presiding over the matter, Judge Travers, was biased and could not give him a fair trial. Accordingly, we agree with OSAD and find any challenge to the denial of defendant's motion for a change of venue would be without arguable merit.

¶ 46                                 E. Right to Compulsory Process

¶ 47        OSAD contends it considered raising a challenge to the denial of defendant's request for the issuance of subpoenas but concluded such a challenge would be without arguable merit. Defendant disagrees with OSAD's evaluation, suggesting a reasonable argument could be made that the denial of his request for the issuance of subpoenas to his psychiatric witnesses violated his right to compulsory process.

¶ 48        While the sixth amendment "guarantees a criminal defendant compulsory process for obtaining witnesses in his favor, by its terms it does not grant him the right to secure the attendance and testimony of any and all witnesses." *People v. McLaurin*, 184 Ill. 2d 58, 89, 703 N.E.2d 11, 26 (1998). Rather, "[t]he defendant must make at least some plausible showing of how the testimony of the witness would have been both material and favorable to his defense." *Id.* "The pertinent inquiry with respect to materiality is not whether the evidence might have helped the defense but whether it is reasonably likely that the evidence would have affected the outcome of the case." *Id.*

¶ 49        Here, defendant did not make an offer of proof that any of the witnesses for whom he was denied subpoenas would provide evidence material to his case. Moreover, with respect to the psychiatric witnesses, defendant acknowledged those witnesses would testify he was sane at the time he threw the container at Sullivan and, therefore, their testimony would not have been favorable to his defense. Accordingly, we agree with OSAD and find any challenge to the denial of defendant's request for the issuance of subpoenas would be without arguable merit.

¶ 50                          F. Waiver of Counsel

¶ 51        OSAD contends it considered raising a challenge to defendant's waiver of counsel but concluded such a challenge would be without arguable merit. Defendant does not dispute OSAD's evaluation.

¶ 52    Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) requires the trial court to ensure a criminal defendant understands the following before accepting a waiver of counsel: (1) the nature of the charges, (2) the possible penalties for the charges, and (3) the right to counsel. "The purpose of Rule 401(a) is to ensure that a waiver of counsel is knowingly and intelligently made." *People v. Haynes*, 174 Ill. 2d 204, 241, 673 N.E.2d 318, 335 (1996). An effective waiver of counsel requires substantial compliance with the rule. *Id.* at 236.

¶ 53    Here, the trial court, prior to accepting defendant's waiver of counsel, discussed with defendant the nature of the charges, the possible penalties for the charges, and the right to counsel. Given the colloquy between the court and defendant, defendant's waiver appears both knowingly and intelligently made. Accordingly, we agree with OSAD and find any challenge to defendant's waiver of counsel would be without arguable merit.

¶ 54       G. Waiver of Jury Trial and Denial of Request to Revoke Waiver

¶ 55    OSAD contends it considered raising a challenge to defendant's waiver of a jury trial and the denial of his subsequent request to revoke that waiver but concluded such a challenge would be without arguable merit. Defendant does not dispute OSAD's evaluation.

¶ 56    A criminal defendant's waiver of his right to a jury trial, in order to be valid, must be done knowingly and understandingly in open court. *People v. Bracey*, 213 Ill. 2d 265, 270, 821 N.E.2d 253, 256 (2004); 725 ILCS 5/103-6(i) (West 2016). Once a defendant waives jury trial, he does not have the ability to withdraw the waiver as a matter of right but rather the decision of whether to permit withdrawal of the waiver is within a trial court's discretion. *People v. Hall*, 114 Ill. 2d 376, 414, 499 N.E.2d 1335, 1351 (1986).

¶ 57    Here, the trial court, prior to accepting defendant waiver of a jury trial, discussed with defendant the right to a jury trial and the consequences of waiving that right and received a

written jury trial waiver from defendant. Given the colloquy between the court and defendant and the written jury trial waiver, defendant's waiver appears both knowingly and understandingly made. Defendant later requested to revoke his waiver, asserting it was not made "intentionally." Defendant's assertion, however, was not supported by the record. Accordingly, we agree with OSAD and find any challenge to defendant's waiver of a jury trial and the denial of his subsequent request to revoke that waiver would be without arguable merit.

¶ 58                                  H. Additional Testing

¶ 59        OSAD contends it considered raising a challenge to the denial of defendant's request for additional testing of Sullivan's uniform but concluded such a challenge would be without arguable merit. Defendant does not dispute OSAD's evaluation.

¶ 60        To demonstrate a right to expert assistance, "there must be some showing that the requested expert assistance is necessary in proving a crucial issue in the case." *People v. Lawson*, 163 Ill. 2d 187, 221, 644 N.E.2d 1172, 1188 (1994). "The touchstone *** is not with what is useful, helpful, valuable, or even important to the defense effort but what is 'crucial' to it." *People v. Keene*, 169 Ill. 2d 1, 7, 660 N.E.2d 901, 905 (1995).

¶ 61        Here, a portion of Sullivan's uniform had already been tested for the presence of a protein consistent with human urine, the result of which indicated the protein was not found. Moreover, the contents of the liquid was not a critical aspect of the State's case—the factfinder could find the throwing of any liquid onto Sullivan amounted to an insulting or provoking physical contact with him. See *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 43, 979 N.E.2d 1002 (finding the State's showing that the defendant struck the officer with an unknown liquid was sufficient to support the guilty verdict). Accordingly, we agree with OSAD and find any challenge

to the denial of defendant's motion for additional forensic testing of Sullivan's uniform would be without arguable merit.

¶ 62                                    I. Sentence Imposed

¶ 63        OSAD contends it considered raising a challenge to the sentence imposed against defendant but concluded such a challenge would be without arguable merit. Defendant does not dispute OSAD's evaluation.

¶ 64        A trial court's sentencing decision is reviewed for an abuse of discretion as the trial court is generally in a "better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341. "[A] sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Little*, 2011 IL App (4th) 090787, ¶ 22, 957 N.E.2d 102.

¶ 65        Here, the trial court sentenced defendant to a prison term within the sentencing range (720 ILCS 5/12-4(e)(2) (West 2008) (providing aggravated battery is a Class 2 felony); 730 ILCS 5/5-8-1(a)(5) (West 2008) (providing the sentencing range for a Class 2 felony)) and properly ordered that sentence be imposed consecutive to his term of life imprisonment (730 ILCS 5/5-8-4(f) (West 2008)). The court also, in reaching its sentencing decision, indicated it considered the evidence and recommendation as well as the factors in aggravation and mitigation. Based upon this record, we agree with OSAD and find any challenge to the sentence imposed against defendant would be without arguable merit.

¶ 66                                    J. Dr. Killian's Testimony

¶ 67     Defendant asserts a reasonable argument could be made to challenge the admissibility of Dr. Killian's testimony as it amounted to perjury and was biased.

¶ 68     In a criminal case, "a defendant preserves an issue for review by (1) raising it in either a motion *in limine* or a contemporaneous trial objection, and (2) including it in the posttrial motion." *People v. Denson*, 2014 IL 116231, ¶ 11, 21 N.E.3d 398. The "[f]ailure to do either results in forfeiture." *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675.

¶ 69     Here, defendant forfeited any issue with Dr. Killian's testimony by failing to properly preserve it for review. Moreover, forfeiture aside, our review of the record fails to disclose any perjury or improper bias by Dr. Killian. Accordingly, we find any challenge to the admissibility of Dr. Killian's testimony would be without arguable merit.

¶ 70          K. Ineffective Assistance of Appellate Counsel

¶ 71     Last, defendant contends his appellate counsel provided ineffective assistance by failing to pursue the issues which he believes are arguably meritorious and by failing to allow him the opportunity to present counsel with documents not contained in the record which would support some of his claims.

¶ 72     "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 73     Here, for the reasons addressed above, the record fails to disclose a single issue which is arguably meritorious. Further, defendant does not explain what documents are in his

possession which are not contained in the record, when he obtained possession of the documents, how the documents would support any of his claims, or the legal authority for his counsel to supplement the record on appeal with the documents. Accordingly, we reject defendant's claim of ineffective assistance of appellate counsel.

¶ 74                                    III. CONCLUSION

¶ 75         We grant OSAD's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 76         Affirmed.